# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

TERENCE JONES,                          :
                                        :
             Plaintiff,                 :
                                        :
      v.                                :        Civil Action No. 22-1064-GBW
                                        :
OFFICER GUY                             :
DEBONAVENTURA, *et al.*,                :
                                        :
             Defendants.                :

---

Terrence Jones, Mullica Hill, New Jersey – *Pro se* Plaintiff

Rosamaria Tasson-DiNardo, CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware – Counsel for Defendants Officer Guy Debonaventura and John Does 1-10

Aaron Christopher Baker, NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware – Counsel for Defendants Officer Guy Debonaventura and John Does 1-10

## **MEMORANDUM OPINION**

November 7, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I.    INTRODUCTION

On August 12, 2022, Defendants Officer Guy Debonaventura and John Does 1-10, as well as other parties subsequently dismissed, removed this civil action to this Court. (D.I. 1.) The complaint filed by *pro se* Plaintiff Terence Jones with the Delaware Superior Court on July 11, 2022 is the operative pleading. (D.I. 1-1; *see also* D.I. 1-2.) Now pending before the Court is a motion for summary judgment filed by Defendant Officer Guy Debonaventura (referred to as Defendant herein). (D.I. 31.) Also pending are Plaintiff's motion for misconduct and fraud on the court, motion for sanctions, motion to strike affidavit, and motion to amend the pleading. (D.I. 37; D.I. 38.) The Court will deny Defendant's motion for summary judgment, deny Plaintiff's motion to amend the pleading without prejudice, deny Plaintiff's motions for lack of cause shown, and order the parties to meet and confer and file a proposed trial schedule.

## II.    BACKGROUND

### A.    Complaint allegations

According to the complaint, on or about July 11, 2020, Plaintiff "was part of a peaceful protest demonstration organized through Justice for Jeremy McDole." (D.I. 1-1 at 4.) "While peacefully protesting, [Plaintiff's] private area was grabbed

by [Defendant], [Plaintiff was] shoved by [Defendant] and other unknown officers, and knocked off his feet to the concrete [sic]." (*Id.*) The complaint also alleges that "[v]ideo shows police assaulting and using excessive force with Plaintiff"; "[i]n said video, officers were shown smirking and laughing as [Plaintiff] was assaulted." (*Id.* at 4-5.) "As a result, [Plaintiff] suffered an injury to his lower back, lower spine, and hip," and Plaintiff "also suffered financial loss due to the incident." (*Id.* at 5.)

Given the allegations, the complaint asserts federal civil rights violations involving excessive use of force and retaliation against protected speech activity, pursuant to 42 U.S.C. § 1983, and related state torts. (*See id.* at 5-9.) By way of this civil action, Plaintiff seeks unspecified monetary damages, costs, legal fees, trial by jury, and "other relief as this Court deems just and equitable." (*Id.* at 9.)

B.    Evidence of record

In moving for summary judgment, Defendant offers evidence in support, which the Court has reviewed in full. (*See* D.I. 33; *see also* D.I. 6; D.I. 30.)  The offered evidence includes five video recordings of the events of July 11, 2020, a 2025 sworn affidavit from Defendant, excerpts from Plaintiff's 2025 deposition transcript, Plaintiff's Citizen Complaint Report regarding the July 11, 2020 incident, Plaintiff's two 2020 formal complaints against Defendant, Wilmington Police

2

Department's responses to the two 2020 formal complaints, and Plaintiff's 2019 formal complaint against other Wilmington Police officers. (*See* D.I. 33.)

According to Defendant's sworn affidavit, Defendant and other officers "formed a police line" after Plaintiff and others crossed the security barricades set up in front of the Wilmington Police station in advance of a July 11, 2020 protest against police brutality. (D.I. 33 at 82.) Once Defendant positioned himself near the security barricades, he "maintained a parade rest position (with [his] hands held behind [his] back) while standing in the police line." (*Id.*) Plaintiff "stood directly in front of [Defendant], facing [him]," while "speaking on a handheld megaphone and his right hand was raised in the air above his head." (*Id.* at 83.) Plaintiff then began moving toward Defendant, and—

> [u]sing his upper body, Plaintiff leaned forward into [Defendant and another officer], and attempted to move [them] apart and cross the police line. The force of Plaintiff's forward momentum pushed [Defendant] backwards several times. As Plaintiff continued to push ahead, [Defendant and the other officer] stood firmly with [their] arms interlocked ([Defendant's] right arm and [the other officer's] left arm) in an effort to resist Plaintiff's forward progress and maintain the integrity of the police line. After being met with sufficient resistance, Plaintiff fell to the ground . . . . As Plaintiff was falling backwards, [Defendant and other officer's] interlocked arms separated and [Defendant's] right hand came forward slightly. [Defendant] did not make contact with Plaintiff's body. [Defendant] never grabbed Plaintiff's private area.

(*Id.*) This account is largely corroborated by the five video recordings offered by

3

Defendant, including the statements about protestors crossing barricades surrounding the police station to reach the officers, who then formed a police line. (*See* D.I. 33; *see also* D.I. 6; D.I. 30.)

Conversely, during his deposition, Plaintiff testified that the protest on July 11, 2020 was supposed to end with a press conference in the middle of the landing in front of the Wilmington Police station and that, as Plaintiff was moving toward the center of the landing, at some point, Defendant and other officers "were there in front of" Plaintiff. (D.I. 33 at 40.) Plaintiff did not recall whether the officers were in a "police line," or whether he had crossed any barricades to reach them, but he stated that it was a public area and questioned the legality of employing "barricades to stop the public from going into a public area." (*Id.* at 37-38.) Plaintiff did not recall any discussion with the officers regarding where Plaintiff intended to go, or where the officers thought that Plaintiff was permitted to go, and Plaintiff believed there was "no need to ask because it's public" property. (*Id.* at 51; *see also id.* at 64-66.)

Plaintiff testified that Defendant prevented Plaintiff from reaching the middle of the landing in front of the police station by assaulting Plaintiff and "put[ting] his hand in [Plaintiff's] private area and grab[bing Plaintiff's] penis and testicles," (*id.* at 46), which was all captured on video (*id.* at 47, 49.) This caused Plaintiff "to

go off balance," as he tried "to get away from [Defendant's] hand," and then Defendant "shoved [Plaintiff] backwards." (*Id.* at 48.) Plaintiff believes that Defendant's actions were, at least in part, retaliatory because Plaintiff was "speaking out against police brutality" by participating in the protest for justice for Jeremy McDole. (*Id.* at 62.)

C.    Contested cell phone video

As mentioned during Plaintiff's deposition and in briefing on Defendant's motion for summary judgment, Plaintiff asserts that one of the video recordings offered by Defendant, a cell phone video uploaded to Facebook—

> shows that Plaintiff was in a defenseless position holding a microphone to his mouth with his left hand and extending his right hand above his head. Defendant looked up at Plaintiff, leaned his body forward, and assaulted Plaintiff by using his open right hand to push Plaintiff backwards in his private area, making Plaintiff fall to the concrete pavement.

(D.I. 35 at 2.) Plaintiff further asserts that the video—

> shows the Defendant in a parade rest position with his arms behind his back. It shows [Plaintiff] attempting to walk in between the Defendant and another officer in order to get by them. It shows the Defendant leaning his body forward using his open right hand to push [Plaintiff] backwards, and causing [Plaintiff] to fall backwards to the concrete ground.

(Id. at 4.)

5

Review of the cell phone video upon which Plaintiff's account relies does not fully corroborate the statements above, Plaintiff's deposition testimony regarding the incident, or the allegations in the complaint. (*See* D.I. 33 at 96 ("A-94"); *see also* D.I. 6; D.I. 30.) Rather, the cell phone video appears to show Defendant, around the one-minute-mark, at parade rest while Plaintiff approaches with a megaphone speaker in his left hand and a raised right hand. Plaintiff attempts to move between Defendant and the officer to Defendant's right. Much of Plaintiff's body is not visible, and Defendant's right arm is also not visible, in this portion of the video. Defendant appears to try to maintain his position as Plaintiff presses his back and torso against Defendant's right arm while trying to move between Defendant and the other officer. When Defendant's right arm becomes visible, he is linking arms with the officer to his right to prevent Plaintiff from moving between them.

Plaintiff steps back, and Defendant returns to parade rest. Plaintiff then attempts to move between Defendant and the officer to his right for a second time. Defendant appears to lean his right shoulder forward slightly in response to Plaintiff pressing against him this time, and Plaintiff takes a slight step back.

6

Plaintiff attempts to move between Defendant and the other officer for a third time and, again, Defendant slightly leans in as Plaintiff presses against him, and then Plaintiff steps back.

Plaintiff then attempts to move between Defendant and the officer to his right for a fourth time. This time, it appears that Defendant and the other officer try to link arms again as Plaintiff tries to move between them. A third officer standing behind adds his forearm to the other officers' linked arms in an apparent attempt to prevent Plaintiff from moving forward.

The video does not appear to depict any contact between Defendant's hands and Plaintiff's genital area, although at one point, Defendant's right hand appears near the outer left side of Plaintiff's hip when Defendant's arm is crossed behind that of the officer to his right. Plaintiff then begins to fall backward, and Defendant's right hand opens and appears to reach towards Plaintiff's left arm as Plaintiff falls. An orange barricade behind Plaintiff is visible when Plaintiff falls to the ground.

## III.    LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec.*

7

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

Where the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an

8

assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted). Conversely,

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is

9

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## IV.  **DISCUSSION**

Upon review and consideration, the Court will deny Defendant's motion for summary judgment. Here, Plaintiff and Defendant tell two different stories of what caused Plaintiff to fall on July 11, 2020. Plaintiff alleges that Defendant grabbed Plaintiff's genitalia and shoved him to the ground. Defendant claims to have never grabbed or shoved Plaintiff; instead, Defendant alleges that Plaintiff fell backwards when met with resistance while pressing against officers crossing arms in a police line.

The burden of persuasion at trial would be on Plaintiff in this case. As such, in moving for summary judgment, Defendant satisfies the initial burden of production by pointing to an absence of evidence supporting Plaintiff's case. *See Matsushita*, 475 U.S. at 586-87; *Williams*, 891 F.2d at 460-61. The Court finds Defendant has satisfied this initial burden because no evidence presented shows Defendant grabbing or shoving Plaintiff.

10

The burden of production then shifts to Plaintiff to demonstrate, by more than a scintilla, but less than a preponderance of evidence, the existence of a genuine issue for trial, by citing to particular parts of material in the record or showing that the materials cited by Defendant do not establish the absence of a genuine dispute. *See id.*; Fed. R. Civ. P. 56(c)(1); *Williams*, 891 F.2d at 460-61. Upon review of Plaintiff's deposition testimony and the contested cell phone video, and drawing all justifiable inferences in Plaintiff's favor, the Court finds that Plaintiff has met this burden.

There are portions of the contested cell phone video in which Defendant's hands and parts of Plaintiff's body are not visible, such that the Court cannot conclude that no reasonable juror would believe Plaintiff's account upon viewing the video. In briefing on summary judgment, Defendant does not contend that grabbing Plaintiff's genitalia and shoving him would be protected by qualified immunity. Because Plaintiff has pointed to more than a scintilla of evidence from which a reasonable inference may be drawn in his favor, Defendant "simply cannot obtain a summary judgment." *Aman*, 85 F.3d at 1081.

Without evaluating the evidence or deciding the truth of the matter, the Court finds a genuine issue for trial based on the parties opposing accounts of what occurred on July 11, 2020, and the less-than-conclusive video evidence cited in

11

support. Accordingly, Defendant's motion for summary judgment (D.I. 31) is denied. Since Defendant's motion for summary judgment (D.I. 31) is denied, and this case will be scheduled for trial, Plaintiff's motion to amend the pleading (D.I. 37) is denied without prejudice to Plaintiff's ability to re-file a motion to amend the complaint if he deems it necessary given Defendant's motion for summary judgment has been denied and this case as currently pled will proceed to trial. Plaintiff's remaining motions (D.I. 38) are denied, as they highlight differences in the parties' accounts but do not sufficiently show misconduct, fraud, or false statements by Defendant.

## V.    **CONCLUSION**

For the above reasons, the Court denies Defendant's motion for summary judgment (D.I. 31). The Court denies Plaintiff's motion to amend the pleading (D.I. 37) without prejudice to Plaintiff's ability to re-file a motion to amend the complaint if he deems it necessary given Defendant's motion for summary judgment has been denied and this case as currently pled will proceed to trial. The Court denies Plaintiff's remaining motions (D.I. 38) for lack of cause shown. The parties are required, by no later than December 8, 2025, to meet and confer and file a proposed trial schedule.

An appropriate Order will be entered.